**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000501
05-JUN-2020
07:58 AM**

NO. CAAP-18-0000501

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI,
Plaintiff-Appellee/Cross-Appellant,
v.
PATRICK H. OKI,
Defendant-Appellant/Cross-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1PC151000488)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Chan and Wadsworth, JJ.)

        Defendant-Appellant/Cross-Appellee Patrick H. Oki (Oki) appeals from the Amended Judgment of Conviction and Sentence (Amended Judgment) and the Free-Standing Order of Restitution, both filed on May 24, 2018, by the Circuit Court of the First Circuit (circuit court).[1] Plaintiff-Appellee/Cross-Appellant State of Hawaiʻi (State) cross-appeals.

## I. BACKGROUND

        This case arises from incidents that occurred between 2011 and 2014, when Oki was managing partner of a local

---

        [1] The Honorable Colette Y. Garibaldi initially presided over the matter until at least May 5, 2016. Although the record is unclear as to the exact date, it appears the matter was then reassigned to the Honorable Paul B.K. Wong. Judge Wong presided until his recusal on July 11, 2016. The Honorable Rom A. Trader then presided over the remainder of the proceedings.

accounting firm, PKF Pacific Hawaii, LLP (PKF).[2] Over that time, PKF's other former partners, Lawrence Chew (Chew), Deneen Nakashima (Nakashima), Dwayne Takeno (Takeno), and Trisha Nomura (Nomura), began to suspect, based on Oki's actions, that Oki had devised and used four schemes to fraudulently obtain money from PKF. The former partners reported the matter to the Honolulu Police Department (HPD) on February 20, 2014. On April 1, 2015, Oki was indicted by a grand jury and charged with: four counts of Theft in the First Degree (Theft 1), in violation of Hawaii Revised Statutes (HRS) §§ 708-830.5(1)(a)[3] and 708-830(2)[4]; three counts of Money Laundering, in violation of HRS § 708A-3(1)(a)(ii)(A)[5]; two counts of Use of a Computer in the

---

[2]     PKF has since changed its name to Spire Hawaii, LLP (Spire).

[3]     HRS § 708-830.5 (2014) provides, in relevant part:

> **§708-830.5 Theft in the first degree.** (1) A person commits the offense of theft in the first degree if the person commits theft:
>
>> (a)    Of property or services, the value of which exceeds $20,000;
>
>> . . . .
>
>> (2) Theft in the first degree is a class B felony.

[4]     HRS § 708-830 (2014) provides, in relevant part:

> **§708-830 Theft.** A person commits theft if the person does any of the following:
>
>> . . . .
>
> (2) Property obtained or control exerted through deception. A person obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property.

[5]     HRS § 708A-3 (2014) provides, in relevant part:

> **§708A-3 Money laundering; criminal penalty.** (1) It is unlawful for any person:
>
>> (a)    Who knows that the property involved is the proceeds of some form of unlawful activity, to knowingly transport, transmit, transfer, receive, or acquire the property or to conduct a transaction involving the property, when, in fact, the property is the proceeds of specified unlawful activity:

Commission of a Separate Crime (Use of a Computer), in violation of HRS § 708-893(1)(a)[6]; and four counts of Forgery in the Second Degree (Forgery 2), in violation of HRS § 708-852[7].  The Indictment charged as follows:

> COUNT 1: On or about January 23, 2011, through and including July 18, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did intentionally obtain and exert control over the property of PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen

---

> . . .
>
> > (ii)  Knowing that the transportation, transmission, transfer, receipt, or acquisition of the property or the transaction or transactions is designed in whole or in part to:
> >
> > > (A)  Conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]
> >
> > . . . .
>
> (4) This section shall not apply to any person who commits any act described in this section unless:
>
> > . . .
> >
> > (b)  The value or the aggregate value of the property transported, transmitted, transferred, received, or acquired is $8,000 or more.

[6]     HRS § 708-893 (2014) provides, in relevant part:

> **§708-893 Use of a computer in the commission of a separate crime.**  (1) A person commits the offense of use of a computer in the commission of a separate crime if the person:
>
> > (a)  Intentionally uses a computer to obtain control over the property of the victim to commit theft in the first or second degree[.]

[7]     HRS § 708-852 (2014) provides:

> **§708-852 Forgery in the second degree.**  (1) A person commits the offense of forgery in the second degree if, with intent to defraud, the person falsely makes, completes, endorses, or alters a written instrument, or utters a forged instrument, or fraudulently encodes the magnetic ink character recognition numbers, which is or purports to be, or which is calculated to become or to represent if completed, a deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status.
>
> (2) Forgery in the second degree is a class C felony.

3

Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, by deception, with intent to deprive PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, of the property, and Patrick H. Oki was aware or believed that the value of the property did exceed Twenty Thousand Dollars ($20,000.00), and the value of the property did, in fact, exceed Twenty Thousand Dollars ($20,000.00), thereby committing the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes.

Count 1 relates to a fraudulent reimbursement scheme that involved misrepresentations about expenses allegedly incurred in connection with **Kamakura Corporation**. (HPD Report No. 14-088031).

COUNT 2: On or about August 3, 2013, through and including October 9, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did intentionally obtain and exert control over the property of PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, by deception, with intent to deprive PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, of the property, and Patrick H. Oki was aware or believed that the value of the property did exceed Twenty Thousand Dollars ($20,000.00), and the value of the property did, in fact, exceed Twenty Thousand Dollars ($20,000.00), thereby committing the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes.

Count 2 relates to a fraudulent reimbursement scheme that involved misrepresentations about expenses allegedly incurred in connection with **AMC Associates**. (HPD Report No. 15-037395).

COUNT 3: On or about July 29, 2013, through and including November 18, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did intentionally obtain and exert control over the property of PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, by deception, with intent to deprive PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, of the property, and Patrick H. Oki was aware or believed that the value of the property did exceed Twenty Thousand Dollars ($20,000.00), and the value of the property did, in fact, exceed Twenty Thousand Dollars ($20,000.00), thereby committing the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes.

Count 3 relates to a fraudulent reimbursement scheme that involved misrepresentations about expenses allegedly incurred in connection with **Asia Market Corporation**. (HPD Report No. 15-037396).

COUNT 4: On or about August 18, 2013, through and including October 8, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did intentionally obtain and exert control over the property of PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, by deception, with intent to deprive PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, of the property, and Patrick H. Oki was aware or believed that the value of the property did exceed Twenty Thousand Dollars ($20,000.00), and the value of the property did, in fact, exceed Twenty Thousand Dollars ($20,000.00), thereby committing the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes.

Count 4 relates to a fraudulent reimbursement scheme that involved misrepresentations about expenses allegedly incurred in connection with **Sumitomo**. (HPD Report No. 15-037397).

. . . .

COUNT 5: On or about January 23, 2011, through and including July 18, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, knowing that the property involved was the proceeds of some form of unlawful activity, to wit, theft, did knowingly transfer the property, and conduct a transaction involving the property, when, in fact, the property was the proceeds of said specified unlawful activity, knowing that the transfer and transaction was designed in whole or part to conceal and disguise the source and ownership of the proceeds of said specified unlawful activity, and the value or aggregate value of the property transferred was $8,000.00 or more, thereby committing the offense of Money Laundering, in violation of Sections 708A-3(1)(a)(ii)(A) and 708A-3(1)(4)(b) of the Hawaii Revised Statutes. Patrick H. Oki is subject to sentencing under Section 708A-3(5)(b) of the Hawaii Revised Statutes, where the value or aggregate value of the property transferred was $10,000.00 or more.

A person commits the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes, if the person obtains and exerts control over the property of another, the value of which exceeds Twenty Thousand Dollars ($20,000.00), by deception, with intent to deprive the other of the property.

Count 5 relates to money that was obtained as a result

of the offense set forth in Count 1 herein above, specifically, money from the **Kamakura Corporation-related** scheme. (HPD Report No. 15-037398).

COUNT 6: On or about August 3, 2013, through and including October 9, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, knowing that the property involved was the proceeds of some form of unlawful activity, to wit, theft, did knowingly transfer the property, and conduct a transaction involving the property, when, in fact, the property was the proceeds of said specified unlawful activity, knowing that the transfer and transaction was designed in whole or part to conceal and disguise the source and ownership of the proceeds of said specified unlawful activity, and the value or aggregate value of the property transferred was $8,000.00 or more, thereby committing the offense of Money Laundering, in violation of Sections 708A-3(1)(a)(ii)(A) and 708A-3(1)(4)(b) of the Hawaii Revised Statutes. Patrick H. Oki is subject to sentencing under Section 708A-3(5)(b) of the Hawaii Revised Statutes, where the value or aggregate value of the property transferred was $10,000.00 or more.

A person commits the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes, if the person obtains and exerts control over the property of another, the value of which exceeds Twenty Thousand Dollars ($20,000.00), by deception, with intent to deprive the other of the property.

Count 6 relates to money that was obtained as a result of the offense set forth in Count 2 herein above, specifically, money from the **AMC Associates-related** scheme. (HPD Report No. 15-037399).

COUNT 7: On or about July 29, 2013, through and including November 18, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, knowing that the property involved was the proceeds of some form of unlawful activity, to wit, theft, did knowingly transfer the property, and conduct a transaction involving the property, when, in fact, the property was the proceeds of said specified unlawful activity, knowing that the transfer and transaction was designed in whole or part to conceal and disguise the source and ownership of the proceeds of said specified unlawful activity, and the value or aggregate value of the property transferred was $8,000.00 or more, thereby committing the offense of Money Laundering, in violation of Sections 708A-3(1)(a)(ii)(A) and 708A-3(1)(4)(b) of the Hawaii Revised Statutes. Patrick H. Oki is subject to sentencing under Section 708A-3(5)(b) of the Hawaii Revised Statutes, where the value or aggregate value of the property transferred was $10,000.00 or more.

A person commits the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes, if the person obtains and exerts control over the property of another, the value of which exceeds Twenty Thousand Dollars ($20,000.00), by deception, with intent to deprive the other of the

property.

Count 7 relates to money that was obtained as a result of the offense set forth in Count 3 herein above, specifically, money from the **Asia Market-related** scheme. (HPD Report No. 15-037400).

. . . .

COUNT 8: On or about August 3, 2013, through and including October 9, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did intentionally use a computer to obtain control over the property of PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, to commit Theft in the First Degree, thereby committing the offense of Use of a Computer in the Commission of a Separate Crime, in violation of Section 708-893(1)(a) of the Hawaii Revised Statutes. A person commits the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes, if the person obtains and exerts control over the property of another, the value of which exceeds Twenty Thousand Dollars ($20,000.00), by deception, with intent to deprive the other of the property.

Count 8 relates to the use of a computer to obtain money to perpetrate the **AMC Associates-related** scheme set forth in Count 2 herein above. (HPD Report No. 15-099033).

COUNT 9: On or about July 29, 2013, through and including November 18, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did intentionally use a computer to obtain control over the property of PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP, to commit Theft in the First Degree, thereby committing the offense of Use of a Computer in the Commission of a Separate Crime, in violation of Section 708-893(1)(a) of the Hawaii Revised Statutes. A person commits the offense of Theft in the First Degree, in violation of Section 708-830.5(1)(a) and 708-830(2) of the Hawaii Revised Statutes, if the person obtains and exerts control over the property of another, the value of which exceeds Twenty Thousand Dollars ($20,000.00), by deception, with intent to deprive the other of the property.

Count 9 relates to the use of a computer to obtain money to perpetrate the **Asia Market Corporation-related** scheme set forth in Count 3 herein above. (HPD Report No. 15-099034).

. . . .

COUNT 10: On or about August 1, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did, with intent to defraud, utter a forged instrument, to wit, a written contract bearing the logo "AMC" and the title "Contract For Legal Translation Consulting Services" and

7

bearing a signature in the name of "Hide Tanaka", which is or purports to be, or which is calculated to become or to represent if completed, a contract or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status, thereby committing the offense of Forgery in the Second Degree, in violation of Section 708-852 of the Hawaii Revised Statutes.

Count 10 relates to a fraudulent contract bearing the name **AMC Associates**. (HPD Report No. 15-099035).

COUNT 11: On or about January 26, 2014, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did, with intent to defraud, utter a forged instrument, to wit, an Internal Revenue Service Form W-9 dated January 24, 2014 bearing the name "AMC Associates", which is or purports to be, or which is calculated to become or to represent if completed, a contract or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status, thereby committing the offense of Forgery in the Second Degree, in violation of Section 708-852 of the Hawaii Revised Statutes.

Count 11 relates to a fraudulent IRS Form W-9 bearing the name **AMC Associates**. (HPD Report No. 15-099036).

COUNT 12: On or about July 15, 2013, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did, with intent to defraud, utter a forged instrument, to wit, a written contract bearing the name "Asiamarket Corporation" and the title "Consulting Agreement" and bearing a signature in the name of "Gerald Woodard", which is or purports to be, or which is calculated to become or to represent if completed, a contract or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status, thereby committing the offense of Forgery in the Second Degree, in violation of Section 708-852 of the Hawaii Revised Statutes.

Count 1[2] relates to a fraudulent contract bearing the name **Asiamarket Corporation**. (HPD Report No. 15-099037).

COUNT 13: On or about January 27, 2014, in the City and County of Honolulu, State of Hawaii, Patrick H. Oki, did, with intent to defraud, utter a forged instrument, to wit, an Internal Revenue Service Form W-9 dated January 10, 2012 bearing the name "Asiamarket Corporation", which is or purports to be, or which is calculated to become or to represent if completed, a contract or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status, thereby committing the offense of Forgery in the Second Degree, in violation of Section 708-852 of the Hawaii Revised Statutes.

Count 13 relates to a fraudulent IRS Form W-9 bearing the name **Asiamarket Corporation**. (HPD Report No. 15-099038).

On April 20, 2016, Oki filed a "Motion to Suppress Evidence Due to Issuance and Execution of Unlawful Search Warrant" (Motion to Suppress Evidence from Unlawful Search Warrant), seeking to suppress evidence obtained from a search warrant of bank records of Oki's accounts at First Hawaiian Bank and any evidence deriving therefrom.  Oki argued that there was no probable cause to support the issuance of the search warrant.

On the same day, Oki filed a "Motion to Dismiss Counts 8 and 9 of the Indictment" (MTD Counts 8 & 9), seeking to dismiss the two counts charging him with Use of a Computer.  Oki argued that his prosecution in Counts 8 and 9 was unconstitutional because: (1) the statute on which the counts were based, HRS § 708-893(1)(a), imposed penalties that amount to "cruel and unusual punishment"; (2) Counts 8 and 9 violated the equal protection clause because by being charged under HRS § 708-893, Oki was treated differently from other individuals charged with Theft 1, and the statute, as applied to Oki, is overbroad and not rationally related to the purpose of the statute or the underlying offense of Theft 1; and (3) Counts 8 and 9 provided Oki with insufficient notice of the nature and cause of the accusations.  As to his "cruel and unusual punishment" argument, Oki also pointed out that there were pending bills before the House and Senate in the 2016 legislative session that recommended the repeal of HRS § 708-893(1)(a), as it applies to theft offenses.[8]  Oki also filed an "Amended Motion to Dismiss Counts 8 and 9 of the Indictment" (Amended MTD) on July 8, 2016.[9]

---

[8]     The bills were subsequently passed and HRS § 708-893(1)(a), as it read at the time of Oki's offenses, was repealed.  2016 Haw. Sess. Laws Act 231, § 42 at 758-59.  The legislature explained its actions as "[r]epealing [the] provision that subjects a person to a separate charge and enhanced penalty for using a computer to commit an underlying theft crime because it seems unduly harsh, given the prevalence of "smart phones" and other computing devices."  2016 Haw. Sess. Laws Act 231, § 35 at 756.

[9]     The Amended MTD most notably provided an updated "Background" section regarding Oki's "cruel and unusual punishment" argument.  The updated section contained a more current discussion of the legislative action pending at the time of the motion.

On April 21, 2016, Oki filed a "Motion to Suppress Evidence From Warrantless Search and Seizure" (Motion to Suppress Evidence from Warrantless Search), seeking to suppress evidence gathered by Nomura and provided to HPD detectives, and any evidence deriving therefrom.  Oki argued that Nomura was acting as a government agent when she gathered company records and other materials and turned them over to HPD, thus conducting an illegal search and seizure.

The circuit court held a three-day evidentiary hearing on the various motions on September 21, 22, and 27, 2016.[10]  On September 22, 2016, the circuit court orally denied the MTD Counts 8 & 9.  The circuit court held that the penalty for HRS § 708-893(1)(a) did not amount to cruel and unusual punishment under the Freitas[11] analysis, his equal protection arguments had no merit, and the charges were sufficient and not vague.

On September 27, 2016, the circuit court orally denied the Motion to Suppress Evidence from Unlawful Search Warrant, holding that there was probable cause for the issuance of the subject search warrant.  As to the Motion to Suppress Evidence from Warrantless Search, the circuit court took the matter under advisement until October 20, 2016, when the circuit court orally denied the motion.  The circuit court held that Nomura and the other partners of PKF were not acting as agents of the State when they gathered information and materials pertaining to the allegations against Oki.

The circuit court entered its written orders denying the subject motions on November 30, 2016.

---

[10]    The evidentiary hearing was held to address multiple other pre-trial motions to dismiss in addition to the subject MTD Counts 8 & 9, Motion to Suppress Evidence from Unlawful Search Warrant, and Motion to Suppress Evidence from Warrantless Search.  On the second day of the hearing, the court took judicial notice of the documents attached as exhibits to the various motions, including a copy of the exhibits and the transcript from the grand jury proceedings.  The circuit court considered these documents in ruling on the various motions.

[11]    State v. Freitas, 61 Haw. 262, 602 P.2d 914 (1979).

The circuit court held a jury-waived trial beginning February 6, 2017, and concluding on February 17, 2017. A total of twenty-eight witnesses testified, including the former partners, HPD employees, police officers from other jurisdictions, business executives and representatives, and Oki himself. The circuit court received "approximately 175 exhibits [into evidence,] which included hundreds of pages of financial records, spreadsheets, invoices, contracts, business records, emails and other documents."

On July 20, 2017, the circuit court issued its "Findings of Fact, Conclusions of Law and Decision" (Decision), finding Oki guilty as charged, except for Count 4, as to which the circuit court found Oki guilty of the lesser-included offense of Theft in the Second Degree (Theft 2), HRS §§ 708-831(1)(b)[12] and 708-830(2). The circuit court found that Oki caused

> actual and substantial financial loss to the firm as follows:
>
> a) $345,122.74 in connection with the Kaimana/Kamakura scheme employed from January 23, 2011 to July 18, 2013;
>
> b) $49,668.70[13] in connection with the AMC Associates scheme employed from August 3, 2013 to October 9, 2013;
>
> c) $35,483.75 in connection with the Asia Market scheme employed from July 29, 2013 to November 18, 2013; and
>
> d) $9,883.35 in connection with the Sumitomo scheme employed from August 18, 2013 to October 8, 2013, as charged in the Indictment.

---

[12] HRS § 708-831 (2014) provides, in relevant part:

**§708-831 Theft in the second degree.** (1) A person commits the offense of theft in the second degree if the person commits theft:

. . .

(b) Of property or services the value of which exceeds $300[.]

[13] The circuit court appears to have made a typographical error in stating the total loss in connection with the AMC Associates scheme. Throughout trial, the parties and witnesses referred to the loss caused by the AMC Associates scheme to be $49,688.70. The circuit court also references the $49,688.70 value in other portions of its Decision. The circuit court incorrectly references $49,668.70 at one other point in the Decision.

11

On October 2, 2017, the State filed "State's Motion for Restitution" (Motion for Restitution), asking the court to order Oki to pay restitution in the total amount of $440,178.54, distributed as $110,044.63 each to Chew, Takeno, Nakashima, and Nomura. Oki filed a Memorandum in Opposition to State's Motion for Restitution on October 11, 2017.

On October 17, 2017, the circuit court held a hearing to address sentencing and, *inter alia*, the Motion for Restitution. The circuit court sentenced Oki to indeterminate terms of imprisonment of ten years each for Counts 1-3, five years for Count 4, ten years each for Counts 5-7, twenty years each for Counts 8-9, and five years each for Counts 10-13, with all terms to be served concurrently with credit for time served. The circuit court reserved the question of restitution.

On November 20, 2017, Oki filed a Second Memorandum in Opposition to State's Motion for Restitution.

The State filed "State's Supplemental Motion for Restitution" (Supplemental Motion for Restitution) on November 20, 2017, seeking restitution in the total amount of $440,178.54 to be distributed to the partners first based on the equity interest of each partner and then divided equally as restitution for lost wages. The State explained:

> 13. Regarding restitution based on "equity ownership interest", the prosecution is requesting that the Court order that Defendant pay restitution as follows:
>
> Lawrence Chew:   10.19% equity
>                      10.19% of $440,178.54 equals $44,854.19
>
> Dwayne Takeno:   5.66% equity
>                      5.66% of $440,178.54 equals $24,914.10
>
> Deneen Nakashima: 5.66% equity
>                      5.66% of $440,178.54 equals $24,914.10
>
> Trisha Nomura:   3.77% equity
>                      3.77% of $440,178.54 equals $16,594.73
>
> Total restitution based on equity ownership: $111,277.12
>
> . . . .
>
> 20. Regarding restitution based on "lost wages",

therefore, the prosecution is requesting that the balance of the $440,178.54 be divided equally by four and that it be designated as "lost wages" sustained by Chew, Takeno, Nakashima, and Nomura, pursuant to State v. Demello. The basic calculation is as follows:

$440,178.54 (total losses proven at trial)
- $111,277.12 (aggregate equity ownership interest restitution amount)
= $328,901.42 (remaining balance owed to be designated as "lost wages")

21. The balance of $440,178.54 after deducting the partners' "equity ownership interest" is $328,901.42. The prosecution is requesting that that amount be divided by four to reflect restitution for "lost wages". $328,901.42 divided by 4 equals $82,225.35.

22. Thus, the prosecution is requesting that the Court issue a free-standing order of restitution that orders that Defendant pay restitution to Chew, Takeno, Nakashima, and Nomura as follows:

Lawrence Chew: $82,225.35 (lost wages)
$44,854.19 (equity ownership)
Total: $127,079.54

Dwayne Takeno: $82,225.35 (lost wages)
$24,914.10 (equity ownership)
Total: $107,139.45

Deneen Nakashima: $82,225.35 (lost wages)
$24,914.10 (equity ownership)
Total: $107,139.45

Trisha Nomura: $82,225.35 (lost wages)
$16,594.73 (equity ownership)
Total: $98,820.08

(Emphases omitted and original formatting altered.)

Oki filed a response to the Supplemental Motion for Restitution on December 11, 2017.

On May 22 and 24, 2018, the circuit court held a hearing to address the motion for restitution. The circuit court took judicial notice of the records and files in this matter, including the Presentence Diagnosis and Report (Presentence Report) prepared by the Adult Client Services Branch. As part of the Presentence Report, Nomura, Nakashima, Takeno, and Chew had submitted victim impact statements and requests for restitution. Spire had also submitted a victim impact statement and request

for restitution.[14]  The circuit court also noted that it had received letters from Grant Thornton, LLP, (Grant Thornton) and Spire, asserting rights to restitution payments.[15]

Chew, Takeno, Nakashima, and Nomura all testified as to their asserted losses.  As support for their requests for restitution, each partner submitted a spreadsheet and documents indicating the amount of guaranteed payments they asserted they should have received during the relevant years and compared it to the amount of compensation actually received during that time.  The difference between the two values was what they calculated to be their lost wages due to Oki's crimes.  The partners asserted that their losses were a result of Oki's crimes because, if Oki had not committed theft of PKF's funds, the firm would have had the cash resources to pay the partners' compensations and other expenses.  On cross-examination, the partners testified that there was no formal written agreement as to the amounts of the partners' guaranteed payments.

The circuit court also allowed a representative of Spire to make a statement at the restitution hearing, but did not allow a representative from Grant Thornton to do so.

The circuit court orally ruled on the motion for restitution, granting it in part and denying it in part.  The circuit court held:

[T]he Court will find that the State has met its burden of

---

[14]     The Presentence Report listed the victims as Nomura, Nakashima, Takeno, and Chew, but noted that it had also contacted Spire because Oki's attorney had stated that PKF was named as a victim in the present matter and that PKF had changed its name to Spire.

[15]     Grant Thornton asserted that PKF had not yet paid the purchase price for acquiring its accounting practice from Grant Thornton and that Grant Thornton was therefore PKF's largest creditor.  Grant Thornton stated: "It would be grossly unfair for any restitution payments to go to former (or current) partners in PKF/Spire without being used to pay down the still-existing, and past-due, debt owed to Grant Thornton."
Spire asserted that it was the direct victim in the matter because it was the entity formerly known as PKF and that Spire was left in significant debt after the former partners compensated themselves during their ownership and then left the partnership without satisfying the firm's outstanding obligations. Spire contended that it resorted to submitting a letter directly to the court because the State refused to acknowledge Spire as a victim.

proving that the total amount of loss in this case as reflected previously in the Court's written decision in the amount of $440,178.54, and that that loss was caused by Mr. Oki's crimes.

The Court finds that [sic] this amount to be reasonable and verified based upon the evidence adduced at trial and during the course of these -- this hearing, and that the State charged and proved that at trial that the defendant committed the four different thefts that were charged in Counts 1 through 4 against the victims identified as PKF Pacific Hawaii, LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne T[a]keno, and Trisha Nomura in their capacity as partners of PKF Pacific Hawaii, LLP.

And so here, the term "victim" really does broadly encompass both the business entity as well as these named partners, and these partners are victims, not in their individual capacity, but only by virtue of their position as partners of this particular firm. And clearly the partnership is entitled to restitution from the defendant. Clearly, the four partners are entitled to restitution from the defendant, but only in their capacity as partners of PKF.

And then to the extent that Spire comes along at a later date after these crimes have been committed and really stands in the shoes of PKF -- it's the same entity rebranded -- while there may be certain agreements that may or may not have been made as to what Spire took on, for all intents and purposes, the Court is looking at Spire as standing in the shoes of PKF.

On May 24, 2018, the circuit court entered its Amended Judgment, which additionally ordered Oki to pay $440,158.54[16] in restitution as follows:

Count 1:    $345,122.74 (Kaimana/Kamakura)
            (from January 23, 2011 to July 18, 2013)

Count 2:    $49,668.70 (AMC Associates)
            (from August 3, 2013 to October 9, 2013)

Count 3:    $35,483.75 (Asia Market)
            (from July 29, 2013 to November 18, 2013)

Count 4:    $9,883.35 (Sumitomo)
            (from August 18, 2013 to October 8, 2013)

Defendant is ordered to pay restitution to PKF Pacific Hawaii, LLP, including but not limited to Lawrence Chew, Deneen Nakashima, Dwayne Takeno & Trisha Nomura in their

---

[16] As discussed *supra* in footnote 13, it appears the circuit court made a typographical error in stating the total loss in connection with the AMC Associates scheme. The error further led to an erroneous calculation of the total restitution amount. The actual total losses from all four schemes is $440,1<u>7</u>8.54, but the circuit court awarded $440,1<u>5</u>8.54 in restitution.

> capacities as partners of PKF Pacific Hawaii, LLP, as it existed between January 23, 2011 to November 18, 2013. All payments shall be deposited into a designated account and thereafter subject to future claims by the defunct entity, PKF Pacific Hawaii, LLP, its former partners, as well as, any other entity including Spire, LLP and Grant Thornton, LLP, able to establish a legally recognized and enforceable claim by way of a civil judgment, civil order or settlement agreement.

(Emphases omitted.) The circuit court also entered a Free-Standing Order of Restitution providing the same.

On June 19, 2018, Oki timely appealed.

On June 22, 2018, the State timely cross-appealed.

On July 5, 2018, the circuit court filed its "Findings of Fact, Conclusions of Law, and Order Granting State's Motion for Restitution" (Order Granting Restitution).

## II.  POINTS OF ERROR

On appeal, Oki asserts the following points of error: (1) the circuit court erred in denying Oki's Motion to Suppress Evidence from Warrantless Search; (2) the circuit court erred in denying Oki's Motion to Suppress Evidence from Unlawful Warrant; (3) the circuit court erred in denying Oki's MTD Counts 8 & 9; (4) there was insufficient evidence that Oki intended to permanently deprive the partnership of any property; and (5) the circuit court erred in granting the State's Motion for Restitution.

On cross-appeal, the State argues that the circuit court erred in refusing to order Oki to pay restitution directly to Chew, Nakashima, Takeno, and Nomura, in their capacities as the sole partners of PKF at the time of Oki's offenses.

## III.  STANDARDS OF REVIEW

### A.  Motion to Suppress Evidence

An appellate court reviews a trial court's ruling on a motion to suppress de novo to determine whether, as a matter of law, the ruling was right or wrong. State v. Eleneki, 106 Hawaiʻi 177, 188, 102 P.3d 1075, 1086 (2004). "[F]actual determinations made by the trial court deciding pretrial motions

16

in a criminal case [are] governed by the clearly erroneous standard," and "conclusions of law are reviewed under the right/wrong standard."  State v. Edwards, 96 Hawaiʻi 224, 231, 30 P.3d 238, 245 (2001) (quoting State v. Eleneki, 92 Hawaiʻi 562, 564, 993 P.2d 1191, 1193 (2000)).

"A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made."  State v. Okumura, 78 Hawaiʻi 383, 392, 894 P.2d 80, 89 (1995) (internal quotation marks and citation omitted), abrogated on other grounds by State v. Cabagbag, 127 Hawaiʻi 302, 315, 277 P.3d 1027, 1040 (2012).  When applying the "clearly erroneous" test, it must be remembered that

> [i]t is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part.  As the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous.  An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.

State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996) (citations omitted).

B.    Constitutional Law

The appellate court reviews questions of constitutional law de novo under the "right/wrong" standard and, thus, exercises its "own independent judgment based on the facts of the case."  State v. Jenkins, 93 Hawaiʻi 87, 100, 997 P.2d 13, 26 (2000) (internal quotation marks and citations omitted).

C.    Statutory Interpretation

The proper interpretation of a statute is a question of law that is reviewed de novo under the right/wrong standard.  Kimura v. Kamalo, 106 Hawaiʻi 501, 507, 107 P.3d 430, 436 (2005).

17

**D.    Sufficiency of Evidence**

It is well established that evidence adduced in the trial court

> must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.  Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

State v. Matavale, 115 Hawaiʻi 149, 157-58, 166 P.3d 322, 330-31 (2007).

> Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion.  And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992) (internal quotation marks and citations omitted).

**E.    Sentencing**

"The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed."  State v. Reis, 115 Hawaiʻi 79, 83, 165 P.3d 980, 984 (2007) (internal quotation marks and citation omitted).

> [W]hile a sentence may be authorized by a constitutionally valid statute, its imposition may be reviewed for plain and manifest abuse of discretion.
>
> Admittedly, the determination of the existence of clear abuse is a matter which is not free from difficulty and each case in which abuse is claimed must be adjudged according to its own peculiar circumstances.  Generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Gaylord, 78 Hawaiʻi 127, 144, 890 P.2d 1167, 1184 (1995)

(original brackets omitted) (quoting State v. Kumukau, 71 Haw. 218, 227-28, 787 P.2d 682, 688 (1990)); see State v. Rauch, 94 Hawaiʻi 315, 322, 13 P.3d 324, 331 (2000).

## IV.  DISCUSSION

### A.  Motion to Suppress Evidence from Warrantless Search

Oki argues that the circuit court erred in denying his Motion to Suppress Evidence from Warrantless Search.  Oki contends that Nomura and the other PKF partners conducted an illegal, warrantless search because they were acting as agents of the State, rather than as private individuals, when they accessed the firm's files and gathered numerous documents to submit to HPD.  Therefore, Oki argues, the documents provided to HPD by Nomura and the other partners should have been suppressed.

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution.

State v. Spillner, 116 Hawaiʻi 351, 357, 173 P.3d 498, 504 (2007) (quoting State v. Kaleohano, 99 Hawaiʻi 370, 375, 56 P.3d 138, 143 (2002)).

The fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution "ensure that an individual's legitimate expectations of privacy will not be subjected to unreasonable governmental intrusions." State v. Kahoonei, 83 Hawaiʻi 124, 129, 925 P.2d 294, 299 (1996)  (quoting State v. Meyer, 78 Hawaiʻi 308, 311-12, 893 P.2d 159, 162-63 (1995)).  Thus, any evidence obtained by private individuals, acting wholly on their own initiative, is not protected by the fourth amendment or article I, section 7, and is admissible in a criminal trial.  Id.  However, if an individual conducts a search while acting as an agent of the government, "the full panoply of constitutional provisions and curative measures applies."  Id. at 127, 925 P.2d at 297 (quoting State v. Boynton, 58 Haw. 530, 536,

19

574 P.2d 1330, 1334 (1978)).

>   In Kahoonei, the Hawaiʻi Supreme Court held that
>
>   when determining whether a private individual is a
>   government agent under article I, section 7 or the fourth
>   amendment, there is no bright-line rule of application.
>   Instead, we must examine the totality of the circumstances
>   to determine whether the governmental involvement is
>   significant or extensive enough to objectively render an
>   otherwise private individual a mere arm, tool, or
>   instrumentality of the state.  In so doing, we focus on the
>   actions of the government, because . . . the subjective
>   motivation of a private individual is irrelevant.

83 Hawaiʻi at 130, 925 P.2d at 300.  As to the totality of the circumstances inquiry, the supreme court has delineated several factors to be considered, including "whether the private individual: (1) was actively recruited; (2) was directed by a government agent; (3) acted for a private purpose; and (4) received any payment for his or her services." Id. at 127, 925 P.2d at 297 (citing Boynton, 58 Haw. at 537-38, 574 P.2d at 1335).

According to testimony from the partners and HPD, on February 20, 2014, Nomura, Nakashima, and Takeno met with HPD Detective Ioane Keehu (Detective Keehu) and HPD Lieutenant John McCarthy (Lieutenant McCarthy) to report the schemes they believed Oki was perpetuating to defraud PKF of money.  The partners brought a large binder with over a thousand pages of documents, including written summaries of the alleged schemes written by Nomura, spreadsheets, and copies of credit card statements, invoices, and emails relating to Oki's claimed expenses.  A copy of the binder's contents was introduced into evidence as Exhibit 40 during the hearing on the Motion to Suppress Evidence from Warrantless Search.

The PKF partners testified that the binder was compiled while they were conducting their own internal inquiry into suspected wrongdoing by Oki and prior to their first meeting with HPD.  After concluding that Oki was involved in fraudulent activity involving the firm, the PKF partners decided to report the matter to HPD because they felt they had a fiduciary

20

responsibility to the partnership and to protect the partnership and its clients.  At the end of the February 20, 2014 meeting, Detective Keehu and Lieutenant McCarthy told the PKF partners that HPD would conduct an investigation into the allegations. When the meeting ended, the PKF partners took the binder with them.

The day after the meeting, Nomura sent Detective Keehu an email with an electronic file of PKF's partnership agreement as an attachment.  Detective Keehu testified that he had requested the partnership agreement to confirm that the partners were authorized to report the matter on behalf of the partnership.  Aside from the partnership agreement, Detective Keehu did not ask the partners to send him any documents or gather any evidence on his behalf.

On February 25, 2014, Nomura sent the physical binder and a hard drive to Detective Keehu.  The hard drive contained the electronic files of the binder's contents as well as a historical copy of Oki's work email account.  The decision to send the hard drive with the electronic copy of the binder's contents and Oki's email account was made by the PKF partners, without the involvement of HPD.  Detective Keehu did not direct the PKF partners to make a copy of Oki's email account or provide electronic files of the binder's contents and was not aware that the PKF partners were intending to do so until Nomura notified him that it would be delivered to him.  Nomura testified that the PKF partners decided to make a copy of Oki's email account because they had concerns about the firm's civil liability for financial and business transactions entered into by Oki.  The hard drive was not accessed until October 1, 2014, when Detective Keehu obtained a search warrant to examine its contents.

Oki primarily argues that Detective Keehu directed Nomura to gather evidence and that several email exchanges between Detective Keehu and Nomura indicate such direction. Contrary to Oki's contention, however, the subject emails do not

21

reflect that Detective Keehu directed Nomura to take any action. Rather, the emails show that Detective Keehu contacted Nomura several times with follow up questions to clarify his understanding of the information that had been provided at their initial meeting on February 20, 2014, or in the hard drive that he had accessed with a search warrant. It is undisputed that the binder provided to HPD at the February 20, 2014 meeting contained over a thousand pages of documents. Based on our review of the emails between Detective Keehu and Nomura contained in the record, we conclude that any instances where Detective Keehu asked for evidence[17] were not requests for Nomura to search for and gather any new evidence, but were instead requests for assistance in locating or explaining the appropriate document among the numerous documents in the materials that had been provided by the PKF partners.

Detective Keehu testified that he did not: recruit any of the PKF partners to take any action on his behalf, offer any inducement or incentive to gather information on his behalf, or encourage or instigate the PKF partners to gather evidence or information on his behalf. Lieutenant McCarthy also testified that he did not instruct the PKF partners to take any action or to gather any evidence on behalf of HPD, nor did he hear Detective Keehu give such instructions. The PKF partners' testimonies established that their gathering and submission to HPD of any documents was for the private purpose of preserving PKF, was of their own volition, and that they were not instructed by HPD to do so.

---

[17] For example, in an email from Detective Keehu to Nomura, dated October 17, 2014, Detective Keehu stated: "[W]e need evidence that Oki was reimbursed for these submitted expenses." Nomura responded by explaining how Oki was being reimbursed and by directing Detective Keehu to a file on the hard drive. In another email from Detective Keehu to Nomura, dated October 20, 2014, Detective Keehu wrote: "The question now is what sort of evidence does PKF have to substantiate the 'receivable' that Patrick owed? And the evidence showing that the 'receivable' was paid down by PKF?" In another email on the same day, Detective Keehu asks for more specific records relating to the same issue. Nomura responded by directing Detective Keehu to documents in the hard drive and particular entries in Oki's email account.

The circuit court found the testimony of Lieutenant McCarthy, Detective Keehu, and the PKF partners to be credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." State v. Bailey, 126 Hawaiʻi 383, 406, 271 P.3d 1142, 1165 (2012) (internal quotation marks, citation, and brackets omitted).

The totality of the circumstances in this case thus show that the PKF partners were not acting as agents of HPD when they gathered the documents. Therefore, any evidence provided by them is not subject to the fourth amendment of the United States Constitution or article I, section 7 of the Hawaiʻi Constitution. Accordingly, the circuit court did not err in denying Oki's Motion to Suppress Evidence from Warrantless Search.

**B. Motion to Suppress Evidence from Unlawful Search Warrant**

Oki argues that the circuit court erred in denying his motion to suppress evidence obtained through a search warrant (SW 2014-193) for Oki's bank records at First Hawaiian Bank. Oki contends that probable cause did not exist to support the search warrant and that Detective Keehu's affidavit in support of the search warrant is "based on unsubstantiated suspicions by unknown declarants, with conclusory statements that criminal conduct has occurred, based on Oki's alleged failure to prove a negative, that they were not false transactions."

The determination of whether probable cause supported the issuance of a search warrant is reviewed de novo. State v. Navas, 81 Hawaiʻi 113, 123, 913 P.2d 39, 49 (1996). "Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed." Id. at 116, 913 P.2d at 42. "This requires more than a mere suspicion but less than a certainty." State v. Detroy, 102 Hawaiʻi 13, 18, 72 P.3d 485, 490 (2003) (internal quotation marks and citation

23

omitted). "Direct evidence, however, is not necessary for a probable cause determination by the magistrate." Navas, 81 Hawaiʻi at 116, 913 P.2d at 42.

"The finding of probable cause may be based upon hearsay evidence in whole or in part." Hawaiʻi Rules of Penal Procedure Rule 41(c). When hearsay is relied upon to establish probable cause, however, the courts apply the two prong test in Aguilar v. Texas, 378 U.S. 108 (1964), and expounded upon in Spinelli v. United States, 393 U.S. 410 (1969). The affiant must set forth: (1) the underlying circumstances from which the informant drew the conclusion regarding criminal activity; and (2) the underlying circumstances which led the affiant to believe that the informer was credible and the informer's information was reliable. State v. Decano, 60 Haw. 205, 210, 588 P.2d 909, 914 (1978); see Detroy, 102 Hawaiʻi at 18, 72 P.3d at 490. If the information provided by the informant alone is found inadequate under Aguilar, "the other allegations which corroborate the information contained in the hearsay report should then be considered." Detroy, 102 Hawaiʻi at 19, 72 P.3d at 491 (internal quotation marks omitted) (quoting Spinelli, 393 U.S. at 415). Oki argues that the second prong of the Aguilar test is not met.

Detective Keehu's affidavit asserts that there was probable cause to believe that Oki committed the offense of Theft in the First Degree and that Oki's bank records at First Hawaiian Bank would provide evidence relating to the offense.

The information providing the facts and circumstances establishing probable cause was gathered through Detective Keehu's investigation. Detective Keehu stated that he had met with PKF partners to discuss their suspicions that Oki was stealing money from the firm. Each partner had an ownership interest in the firm. At the meeting, Nomura "detailed several schemes where OKI deceived the Partners, and used the Firm's money for his own personal use without authorization."

Detective Keehu then outlined the facts pertaining to

24

the multiple schemes that Oki allegedly perpetuated to commit Theft in the First Degree. For the first scheme, Detective Keehu described the following facts: (1) Oki told his fellow PKF partners that he was approached by the U.S. government to enter into a secret arrangement with the U.S. government and a client firm, Kamakura Corporation (Kamakura), under which Oki would pay expenses to a third-party consulting firm, Kaimana Consulting (Kaimana), and PKF would then be reimbursed by Kamakura; (2) Oki submitted multiple expense reimbursement requests relating to the alleged secret arrangement; (3) PKF reimbursed Oki for his expenses with checks payable to Oki or by direct deposit into Oki's First Hawaiian Bank personal account; (4) PKF was never reimbursed by Kamakura for the money PKF had given Oki relating to the alleged secret arrangement, which exceeded $450,000; and (5) Oki did not provide contact information for his government contact and the PKF partners could not confirm the existence of the secret arrangement through inquiries with Kamakura. As to the second scheme, the facts included: (1) Oki informed the PKF partners that he began working on a due diligence engagement with Sumitomo Realty and Development (Sumitomo) for their intended acquisition of Hawaiian Cement and Ameron; (2) Oki charged large amounts on his work credit card for hotel stays and other services he claimed he fronted the costs for as a favor to Sumitomo, many of which were unaccompanied by evidence that they were work-related or that any services were actually received; (3) most amounts were paid through PayPal and did not have supporting invoices; (4) Oki assured the PKF partners that Sumitomo would reimburse PKF for the charges; (5) Oki claimed that the Sumitomo engagement was part of another secret government arrangement; (6) many of the charges referenced a "Kishi Sato" who Oki claimed was his Sumitomo contact; (7) Oki attributed credit card charges for stays at the Trump Hotel to Kishi Sato, but Detective Keehu discovered that Oki and an individual named Eunae Harrison were the registered guests; (8)

when the PKF partners contacted Sumitomo, they were told that there was no employee named "Kishi Sato"; (9) when one of the PKF partners asked to be included on emails with Kishi Sato, he received an email from an individual named Kishi Sato, but the domain name of the sender's email address did not match the true domain names of any Sumitomo branch, and was instead a domain that had been created the same day the email was sent; and (10) PKF was never reimbursed by Sumitomo for the charges, which exceeded $170,000 in total.  For the third scheme, the facts included: (1) Oki informed the PKF partners that he would be traveling to New York with a "Mr. Harrison" for work-related business; (2) Oki's work credit card showed charges made in both Chicago and New York during the time period he originally stated he would be in New York; (3) the charges included airfare to Chicago and a hotel stay in Times Square, New York, and meal and entertainment charges in New York; (4) there were further inconsistencies within Oki's explanations for the inconsistencies between his credit card charges and the travel plans relayed to the PKF partners; (5) the name listed on an airline ticket, Eunael Harrison, was very similar to an individual named Eunae Harrison who had mail delivered to the PKF office address in a previous month; (6) Oki initially stated that Eunael Harrison and Eunae Harrison were two different individuals but later acknowledged that he had lied and the two were indeed the same person; and (7) Detective Keehu's search for "Eunae L. Harrison" on Honolulu Infotrack Investigative Query and Hawaiʻi Driver's License database resulted in identifying a Eun Ae Lee Harrison, a 30-year-old woman.

The affidavit stated that the PKF partners approached Detective Keehu to report the matter on behalf of the alleged victim partnership, in which each partner had an ownership interest.  The partners volunteered to provide information about Oki's suspected wrongdoing.  The partners were witnesses to the alleged wrongdoing and parties to the conversations with Oki.

26

Furthermore, Detective Keehu also corroborated some of the information provided by the partners with information obtained independently.[18]  These circumstances support a conclusion that the source of the information was credible.  See State v. Decano, 60 Haw. 205, 211, 588 P.2d 909, 914 (1978); cf. State v. Galon, No. 29654, 2011 WL 2126425, at *2-3 (Haw. App. May 26, 2011) (SDO) (holding that an officer's affidavit provided sufficient information of the underlying circumstances to support the officer's conclusion that the informant was credible or the information she provided was reliable where the informant had approached the police as a crime victim and, in volunteering to provide information about others involved in drug trafficking, admitted to her own involvement in illegal drug activity, and the affidavit provided independent information corroborating aspects of informant's statement).

Oki also argues that the facts set forth in the affidavit do not amount to evidence that Oki was involved in criminal activity.  Although the facts established in the affidavit may not constitute direct evidence of any wrongdoing on Oki's part, we conclude that when the facts are taken together with the reasonable inferences from those facts, and considered as a whole, they are sufficient to "warrant a person of reasonable caution to believe that [the offense of Theft in the First Degree] has been committed."  Navas, 81 Hawaiʻi at 116, 913 P.2d at 42; see also id. ("Direct evidence, however, is not necessary for a probable cause determination by the magistrate."); Decano, 60 Haw. at 209, 588 P.2d at 913 ("It is clear that only the probability, and not a prima facie showing, of criminal activity is needed to establish probable cause.").

---

[18]  Regarding part of an alleged scheme where Oki had submitted a credit card invoice for stays at the Trump Hotel attributed to Kishi Sato, who the partners believed to be a fictional person, Detective Keehu stated that he checked with the Trump Hotel Honolulu and discovered that Oki and an individual named Eunae Harrison were the registered guests, and that surveillance photos at check-in show a male and female that strongly resembled Oki and Eunae Harrison.

Therefore, we conclude that the facts and circumstances set forth in Detective Keehu's affidavit established probable cause to issue the search warrant and the circuit court did not err in denying the Motion to Suppress Evidence from Unlawful Warrant.

## C.  Dismissal of Counts 8 and 9

Oki argues that the circuit court erred in denying his MTD Counts 8 & 9, which charged Oki with Use of a Computer.  Oki contends that Counts 8 and 9 should have been dismissed because the statute on which the charges were based, HRS § 708-893(1)(a),[19] was unconstitutional in that it imposed cruel and unusual punishment for using a computer in the commission of theft, and also violated the Equal Protection Clause.  Oki further contends that Counts 8 and 9 were vague and did not provide him with adequate notice of the nature of the charges against him.

### 1.  Cruel and Unusual Punishment

We first consider the constitutionality of HRS § 708-893(1)(a).  At the time Oki was charged with Use of a Computer, HRS § 708-893(1)(a) provided that a person who intentionally uses a computer to commit theft in the first or second degree commits the separate offense of Use of a Computer.  HRS § 708-893(2) (2014) provided:

> Use of a computer in the commission of a separate crime is an offense one class or grade, as the case may be, greater than the offense facilitated.  Notwithstanding any other law to the contrary, a conviction under this section shall not merge with a conviction for the separate crime.

Counts 8 and 9 were charged in connection with Counts 2 and 3, for Theft 1.  Theft 1 is a class B felony punishable by an indeterminate term of imprisonment of ten years.  HRS § 708-830.5(2); HRS § 706-660(1)(a) (2014).  Pursuant to HRS § 708-893(2), if Oki was convicted of Use of a Computer along with the

_____

[19]    HRS § 708-893 has since been amended and the provision Oki challenges has been repealed, as discussed *infra*.

underlying offense of Theft 1, the counts for Use of a Computer would be class A felonies, each carrying indeterminate terms of imprisonment of twenty years without the possibility of suspension of sentence or probation.  HRS § 706-659 (2014).

Oki argues that the enhanced penalty for Use of a Computer in the commission of theft amounts to cruel and unusual punishment, in violation of the eighth amendment to the United States Constitution and article I, section 12 of the Hawaiʻi Constitution.[20]  Oki specifically maintains that: (1) he did not commit any violent offense; (2) he had no criminal history and held an otherwise reputable position in the community and in his profession; (3) his use of online banking to commit the theft was not the type of computer use that the legislature intended to criminalize; (4) Hawaiʻi was the only state that imposed a mandatory twenty-year term for using a computer to commit Theft 1; and (5) the penalty was disproportionate as compared to more serious, violent offenses.

The supreme court has held that "[t]he question of what constitutes an adequate penalty necessary for the prevention of crime is addressed to the sound judgment of the legislature and the courts will not interfere with its exercise, unless the punishment prescribed appears clearly and manifestly to be cruel and unusual." Freitas, 61 Haw. at 267, 602 P.2d at 919, overruled on other grounds by State v. Auld, 136 Hawaiʻi 244, 361 P.3d 471 (2015).

> The standard by which punishment is to be judged under the 'cruel and unusual' punishment provisions of both the United States and Hawaiʻi Constitutions is whether, in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community.

State v. Kahapea, 111 Hawaiʻi 267, 282, 141 P.3d 440, 455 (2006)

---

[20]    In his opening brief, Oki incorrectly refers to the prohibition against cruel and unusual punishment as falling under "Section 14 of the Hawaii Constitution."

(brackets omitted) (quoting <u>Freitas</u>, 61 Haw. at 267-68, 602 P.2d at 920).

In <u>Freitas</u>, the supreme court adopted a three-pronged test to determine whether a punishment is cruel and unusual, which directs us to consider:

> (1) the nature of the offense and/or the offender, with particular regard to the degree of danger posed by both to society; (2) the extent of the challenged penalty as compared to the punishments prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the challenged penalty as compared to the punishment prescribed for the same offense in other jurisdictions.

61 Haw. at 268, 602 P.2d at 920; <u>see</u> <u>State v. Solomon</u>, 107 Hawaiʻi 117, 132, 111 P.3d 12, 27 (2005). "[T]he nature of the offense and the danger the offender poses to society are the key factors in this determination." <u>Freitas</u>, 61 Haw. at 268, 602 P.2d at 920.

In Act 141 of 2006, the legislature amended the offense of Use of a Computer in HRS § 708-893 to include the intentional use of a computer in facilitating the commission of theft in the first or second degree. 2006 Haw. Sess. Laws Act 141, § 1 at 390. The legislature's purpose in this amendment was to "deter Internet fraud." H. Stand. Comm. Rep. No. 679-06, in 2006 House Journal, at 1368; S. Stand. Comm. Rep. No. 3116, in 2006 Senate Journal, at 1511. The legislature recognized:

> The use of a computer to commit theft is a growing problem in Hawai[ʻ]i and the number of crimes that are perpetrated via the Internet is increasing. The use of a computer as an instrument of the crime offers the perpetrator relative anonymity, a quick and easy mechanism to commit fraud, and the potential for sizable financial gain. According to the Federal Trade Commission (FTC), Hawai[ʻ]i ranks fifth in the nation in internet fraud complaints per capita.

S. Stand. Comm. Rep. No. 3116, in 2006 Senate Journal, at 1511. Furthermore, the legislature expressly contemplated:

> [Use of a Computer] carries a penalty one class or grade above the offense facilitated by the use of a computer. Thus, in [sic] any theft where the property taken exceeds $300 would be punishable as a class B felony under [Use of a Computer]. The use of a computer to steal property valued in excess of $20,000, would be punishable as a class A felony under [Use of a Computer].

H. Stand. Comm. Rep. No. 679-06, in 2006 House Journal, at 1368.

In this case, Oki was charged with Use of a Computer in Counts 8 and 9 in connection with the charges for Theft 1 in Counts 2 and 3, respectively. In Counts 2 and 8, Oki was alleged to have committed theft of over \$49,000.[21] In Counts 3 and 9, Oki was alleged to have committed theft of \$35,483.75. The alleged schemes involved Oki creating fictitious identities, companies, email addresses, websites, and accounts for online payment services in order to obtain money from PKF. While these offenses did not involve any violence, we cannot say that the use of a computer to create fake companies, identities, and online accounts to obtain money far exceeding the \$20,000 threshold for Theft 1 does not pose a danger to society. Cf. Kahapea, 111 Hawaiʻi at 282, 141 P.3d at 455 (denying a cruel and unusual punishment argument for a public official defendant who was involved in a bid-rigging scheme and was convicted of multiple counts of theft in the first degree and sentenced to five consecutive terms of ten years each, citing the "destructive, deceitful, and wasteful, albeit nonviolent, character of [defendant's] offenses," despite the defendant's arguments that, inter alia, he lived a law-abiding life for a substantial period of time prior to his offenses (emphasis added)). Oki's use of the computer--specifically, using his work credit card to deposit money into accounts for online payment services that he created under the guise of fictitious companies, and later transferring the money to his personal bank accounts--fall within the purview of the type of conduct the legislature intended to prevent and

---

[21] During the grand jury proceedings, Detective Keehu testified that Count 2 was based on theft of \$49,688.70, while Count 8 was based on theft of \$49,250.96. Counts 2 and 8 were both based on the AMC Associates scheme, wherein Oki was alleged to have used his work credit card to deposit money into a Square account, and then transfer the money to his personal American Savings Bank account. Oki allegedly deposited \$49,688.70 from his work credit card into his Square account, and then transferred \$49,250.96 to his American Savings Bank account. The lesser dollar amount was "attributed to the fees that Square takes off of each transaction."

subject to an enhanced penalty.[22] See Solomon, 107 Hawaiʻi at 132, 111 P.3d at 27 (examining the legislative purpose in enacting a statute and finding that it evinced the danger the offense posed to society).

As to the second prong of the Freitas test, compared to the penalties prescribed for more serious crimes, a sentence of twenty years for the use of a computer in committing first degree theft is not so disproportionate as to "shock the conscience of reasonable persons or to outrage the moral sense of the community, in light of developing concepts of decency and fairness." Kahapea, 111 Hawaiʻi at 282, 141 P.3d at 455. For example, the more serious offenses of first degree murder, first degree attempted murder, and second degree murder that is unnecessarily torturous to a victim, carry sentences of life imprisonment without the possibility of parole. HRS § 706-656 (2014), HRS § 706-657 (2014). Classifying the use of a computer to commit first degree theft as a class A felony is comparable to the classification of other computer crimes as class A felonies. See HRS § 708-892(2) (2014) ("Computer damage in the first degree is a class A felony."); HRS § 708-891(2) (2014) ("Computer fraud

---

[22] Oki also contends that the legislature's decision to remove theft from the purview of HRS § 708-893 in 2016 supports his argument that the statute imposed cruel and unusual punishment. See 2016 Haw. Sess. Laws Act 231, § 42 at 758-59. Oki specifically points to House Bill 2561, which led to the removal of theft in the first or second degree as underlying offenses that would subject a person to the separate offense of Use of a Computer and enhanced penalties. See H.B. 2561, 28th Leg., Reg. Sess. (2016). House Bill 2561 recommended amending HRS § 708-893 by "[r]epealing a provision that subjects a person to a separate charge and enhanced penalty for using a computer to commit an underlying theft crime because it seems unduly harsh, given the prevalence of 'smart phones' and other computing devices." Id. (emphasis added). Oki argues that the legislature's description of the provision as "unduly harsh" lends support to his argument that the statute unconstitutionally imposes cruel and unusual punishment.

We do not agree that the legislature's characterization of the provision as "unduly harsh" indicates an acknowledgment that the statute violated the protection against cruel and unusual punishment. The Act contained a savings clause, providing that the repeal of the provision held only proactive effect and did not have any retroactive effect: "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date[.]" 2016 Haw. Sess. Laws Act 231, § 70 at 775. If the legislature intended to, it could have made the law have retroactive effect, but it did not.

in the first degree is a class A felony."); HRS § 708-895.5(2) (2014) ("Unauthorized computer access in the first degree is a class A felony.").

As to the third and final prong of the Freitas test, it appears that Michigan is the only other state that has a separate offense for the use of a computer in the commission of a crime. See Mich. Comp. Laws Ann. § 752.796 (West 2020).[23] Michigan limits the additional penalty for the use of a computer in the commission of a crime to the maximum term of imprisonment prescribed for the underlying crime. See Mich. Comp. Laws. Ann. § 752.797 (West 2020).[24] Thus, the third Freitas factors weighs

---

[23] Mich. Comp. Laws Ann. § 752.796 (West 2020), effective from September 19, 2000, provides:

> Sec. 6 (1) A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime.
>
> (2) This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law committed by that person while violating or attempting to violate this section, including the underlying offense.
>
> (3) This section applies regardless of whether the person is convicted of committing, attempting to commit, conspiring to commit, or soliciting another person to commit the underlying offense.

[24] Mich. Comp. Laws Ann. § 752.797(3) (West 2020), effective from September 19, 2000, provides:

> (3) A person who violates section 6 is guilty of a crime as follows:
>
> (a) If the underlying crime is a misdemeanor or a felony with a maximum term of imprisonment of 1 year or less, the person is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $5,000.00, or both.
>
> (b) If the underlying crime is a misdemeanor or a felony with a maximum term of imprisonment of more than 1 year but less than 2 years, the person is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $5,000.00, or both.
>
> (c) If the underlying crime is a misdemeanor or a felony with a maximum term of imprisonment of 2 years or more but less than 4 years, the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

in favor of finding that the enhanced penalty imposed by HRS § 708-893(1)(a) constituted cruel and unusual punishment.

In considering all three factors together, with particular focus on the nature of the offense and the danger the offender poses to society, see Freitas, 61 Haw. at 268, 602 P.2d at 920, we conclude that the enhanced penalty imposed by HRS § 708-893(1)(a) for use of a computer in committing an underlying theft crime was not unconstitutional.

2.  Equal Protection

Oki next argues that HRS § 708-893(1)(a) violated his equal protection rights under the U.S. Constitution and the Hawai'i Constitution.

> The Equal Protection Clause mandates that all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed.  It does not, however, require that state legislation operate or apply equally upon every citizen of a state.  A legislative classification which is reasonable and not arbitrary, and which is based upon some ground of difference bearing a rational relation to the objectives sought to be achieved by the legislation is permissible. . . . And because a statute is presumed to be constitutional, the party challenging the constitutionality of a statute on equal protection grounds bears the heavy burden of showing that the statute is arbitrary and capricious, and as such, objectionable.

Id. at 271, 602 P.2d at 922 (footnote and citations omitted). The rational basis standard applies here, where Oki does not allege that either a fundamental right or a suspect

---

(d) If the underlying crime is a felony with a maximum term of imprisonment of 4 years or more but less than 10 years, the person is guilty of a felony punishable by imprisonment for not more than 7 years or a fine of not more than $5,000.00, or both.

(e) If the underlying crime is a felony punishable by a maximum term of imprisonment of 10 years or more but less than 20 years, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both.

(f) If the underlying crime is a felony punishable by a maximum term of imprisonment of 20 years or more or for life, the person is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

(Footnote omitted.)

classification is implicated.  Tax Found. of Hawaiʻi v. State, 144 Hawaiʻi 175, 205, 439 P.3d 127, 157 (2019) ("It is well-established that unless fundamental rights or suspect classifications are implicated, we will apply the rational basis standard of review in examining a denial of equal protection claim." (internal quotation marks and citation omitted)).

As discussed *supra*, the legislative purpose behind including theft in the first and second degree as underlying offenses upon which Use of a Computer could be charged was to prevent internet fraud in a time when the "use of a computer to commit theft [was] a growing problem in Hawai[ʻ]i and the number of crimes that [were] perpetrated via the Internet [was] increasing."  S. Stand. Comm. Rep. No. 3116, in 2006 Senate Journal at 1511.  The legislature acted within its authority when it provided an enhanced penalty for the use of a computer in the commission of first and second degree theft to combat the growing incidence of these crimes.  Jenkins, 93 Hawaiʻi at 114, 997 P.2d at 40.  ("The question of what constitutes an adequate penalty necessary for the prevention of crime is addressed to the sound judgment of the legislature[.]" (quoting Freitas, 61 Haw. at 267, 602 P.2d at 920)).  Furthermore, Oki has not shown that HRS § 708-893(1) no longer bore a rational relationship to its purpose at the time of his offense.  See State v. Bloss, 62 Haw. 147, 157, 613 P.2d 354, 361 (1980) (holding that although a statute was justified when enacted, it violated the equal protection guarantee of the U.S. and Hawaiʻi constitutions where it no longer bore a rational relationship to the harm it sought to avoid).

Oki has not met his burden of showing that HRS § 708-893(1)(a) was arbitrary and capricious.

3.   Overbreadth

Oki asserts that HRS § 708-893 is overbroad because "[o]nline banking is not a crime and does not constitute Internet fraud" and that the "Legislature could not have intended to 'cast

such a wide net' when it adopted this statute in 2006 criminalizing so common and innocent an activity as online banking[.]"

"Generally, one who alleges that a statute is unconstitutionally overbroad must be directly affected by the claimed overbroad aspects.  That is, the doctrine is generally limited to challengers who allege that their innocent conduct has been improperly swept into the reach of the statute."  State v. Alangcas, 134 Hawaiʻi 515, 527, 345 P.3d 181, 193 (2015) (quotation marks, ellipsis, and citations omitted).

Oki was convicted of offenses involving Theft 1, which is the requisite underlying offense for Use of a Computer.  HRS 708-893(1)(a).  Therefore, Oki's asserted use of "online banking" is not "innocent conduct [that] has been improperly swept into the reach of the statute" as he is a person to whom HRS § 708-893(1)(a) directly applies, and he therefore does not have standing to assert an overbreadth challenge.  See Alangcas, 134 Hawaiʻi at 527, 345 P.3d at 193; State v. Guidry, 105 Hawaiʻi 222, 240, 96 P.3d 242, 260 (2004) (finding that because the defendant was a person as to whom a statute directly applied, he does not have standing to assert an overbreadth challenge based on hypothetical applications of the statute).  HRS § 708-893(1)(a) requires that a person "[i]ntentionally use[] a computer to obtain control over the property of the victim to commit theft in the first or second degree[.]"  Use of a computer to conduct innocent online banking is not prohibited by HRS § 708-893(1)(a), and thus a substantial amount of constitutionally protected conduct is not implicated.  See Alangcas, 134 Hawaiʻi at 528, 345 P.3d at 194 ("A court may also entertain a facial overbreadth challenge when the enactment reaches a substantial amount of constitutionally protected conduct." (quotation marks and citation omitted)).

    4.   Sufficiency of the Charges

As to Oki's contention that Counts 8 and 9 were vague

36

and insufficient to provide him with notice of the nature and cause of the accusations against him, we find this contention has no merit.

"Where the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient." State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d 1242, 1245 (1977); see Schwartz v. State, 136 Hawai‘i 258, 286, 361 P.3d 1161, 1189 (2015).

Counts 8 and 9 were both drawn in the language of the statutes pursuant to which they were brought and contain all essential elements of the offense of using a computer in the commission of theft in the first degree, as well as the definitions of applicable terms. Both counts provided sufficient notice that Oki was being charged based on his intentional use of a computer to obtain control over the property of PKF, as set forth in Counts 2 and 3. Counts 8 and 9 were therefore sufficient.

Based on the foregoing, we conclude that the circuit court did not err in denying Oki's MTD Counts 8 & 9.

D.   **Sufficiency of Evidence**

Oki argues that there was insufficient evidence that he had the intent to permanently deprive the partnership of any property. Oki maintains that he was simply collecting what was due to him based on his capital contributions to the partnership and his share of the profits, and that, therefore, the partnership suffered no loss.

During trial, Oki freely admitted that he deliberately engaged in misleading and deceitful conduct to obtain money from the firm. Oki also testified that he knew that the money was the firm's property. Oki used the money that he obtained through his various schemes for personal expenses.

37

Oki testified, however, that he was entitled to any money that he obtained through his various schemes. During direct examination, Oki testified that he did not believe he was committing theft from PKF, explaining as follows:

> I felt like I had been underpaid for at least a couple years, and based on the Partnership Agreement, I'm entitled to that share of profit based on my ownership percentage. Also, I was authorized to receive advanced distributions from the company or from the firm. I also believe there was no harm made to the firm or to the partners.

Oki also testified that he did not intend to deprive PKF of any of its property "[b]ecause the money was for [himself]." The circuit court found Oki's testimony to be "less than credible" and rejected this argument in finding Oki guilty. On appeal, this court will not pass upon issues resting on credibility of witnesses and weight of evidence. Bailey, 126 Hawaiʻi at 406, 271 P.3d at 1165.

Despite Oki's testimony regarding his belief that he was entitled to the money he obtained through his fraudulent schemes, when viewed in a light most favorable to the State, there was sufficient evidence showing that Oki, knowing that the money belonged to the partnership,[25] intended to keep the money and use it for himself, thereby depriving the partnership of the money and the other partners of their ownership interest in the money. See HRS § 708-830; HRS § 708-830.5; Matavale, 115 Hawaiʻi at 157-58, 166 P.3d at 330-31; Batson, 73 Haw. at 248-49, 831 P.2d at 931. There was thus sufficient evidence of Oki's intent to deprive to support Oki's convictions.

## E.   Restitution

Notwithstanding the apparent typographical errors

---

[25]   HRS § 425-110 (2004) provides: "**§425-110   Partnership property.** Property acquired by a partnership is property of the partnership and not of the partners individually."

HRS § 425-126 (2004) provides: "**§425-126   Partner not co-owner of partnership property.** A partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily."

discussed *supra* in footnotes 13 and 16, neither party expressly challenges the $440,158.54 total amount of restitution ordered by the circuit court.  The parties instead dispute the manner in which the restitution should be collected/distributed.  In its cross-appeal, the State argues that the circuit court should have ordered Oki to pay restitution of $440,178 directly to Chew, Takeno, Nakashima, and Nomura, rather than pay the restitution into a designated account, subject to claims by any person or entity able to establish a legally recognized and enforceable claim by way of a civil judgment, order or settlement agreement.  On the other hand, Oki argues that any restitution should not be paid directly to the other partners as they were not considered direct victims for restitution purposes.  Oki contends that any restitution should be to PKF alone, subject to the partnership agreement and any claims by former partners and other entities with an interest in the firm.

At the time of Oki's sentencing, HRS § 706-646 (2014 & Supp. 2017) provided, in relevant part:

> **§706-646  Victim restitution.**  (1)  As used in this section, "victim" includes any of the following:
>
> > (a)   The direct victim of a crime including a business entity, trust, or governmental entity[.]
>
> > . . . .
>
> (2)   The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim.  The court shall order restitution to be paid to the crime victim compensation commission if the victim has been given an award for compensation under chapter 351.  If the court orders payment of a fine in addition to restitution or a compensation fee, or both, the payment of restitution and compensation fee shall be made pursuant to section 706-651.
>
> (3)   In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order.  The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment.  The court shall specify the time and manner in which restitution is to be paid.  While the defendant is in the custody of the department of public safety, restitution shall be collected

39

> pursuant to chapter 353 and any court-ordered payment schedule shall be suspended. Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to:
>
> (a)     Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible[.]

The purpose of restitution in the criminal context is "not only to repay the person injured by the criminal act, but also to develop in the offender 'a degree of self-respect and pride' for having 'righted a wrong committed.'" State v. Feliciano, 103 Hawaiʻi 269, 272, 81 P.3d 1184, 1187 (2003) (quoting State v. Murray, 63 Haw. 12, 19 n.11, 621 P.2d 334, 339 n.11 (1980), overruled on other grounds by Gaylord, 78 Hawaiʻi at 152-53, 890 P.2d at 1192-93). This court has adopted a preponderance of the evidence standard in restitution hearings. See State v. Demello, 130 Hawaiʻi 332, 342-45, 310 P.3d 1033, 1043-46 (App. 2013) (Demello I), reversed in part on other grounds by State v. Demello, 136 Hawaiʻi 193, 361 P.3d 420 (2015) (Demello II).

Chew, Nakashima, Takeno, and Nomura each requested restitution based on: (1) their equity ownership interest in PKF; and (2) lost wages suffered as a result of Oki's conduct. The partners asserted that they should have received a certain amount of guaranteed compensation each year but did not receive the amounts they were entitled to, or at some times, did not receive any compensation at all. Their asserted lost wages were the differences between the guaranteed compensation they should have received and the compensation they actually received during the specified time period.

The circuit court also allowed a representative of Spire to make a statement in support of its request for restitution. Spire asserted that it was entitled to restitution because it was the entity formerly known as PKF. To the extent that PKF was the direct victim of Oki's crimes, Spire asserted that Spire was now the appropriate entity to receive the

40

restitution payments.

As charged in the Indictment, the victims of Oki's theft crimes in Counts 1-4 were identified as "PKF Pacific Hawaii LLP, including but not limited to, Lawrence Chew, Deneen Nakashima, Dwayne Takeno, and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii LLP." In its Order Granting Restitution, the circuit court found and concluded that "both the business entity, 'PKF Pacific Hawaii, LLP,' as well as, each of the four partners, 'Lawrence Chew, Deneen Nakashima, Dwayne Takeno and Trisha Nomura in their capacities as partners of PKF Pacific Hawaii, LLP' are 'victims' for purposes of restitution."

During trial, Oki testified on several occasions that the money that he obtained through his schemes belonged to PKF. Notably, the circuit court, in its Decision, concluded:

> 5. In Counts 1, 2 and 3, Theft in the First Degree, the prosecution has proved beyond a reasonable doubt that during the dates alleged, the Defendant intentionally obtained and exerted unauthorized control over the <u>property of PKF</u>, the value of which exceeded $20,000, by deception with the intent to deprive <u>PKF</u> of the property. . . .
>
> 6. In Count 4, Theft in the Second Degree, the prosecution has proved beyond a reasonable doubt that during the dates alleged, the Defendant intentionally obtained and exerted unauthorized control over the <u>property of PKF</u>, the value of which exceeded $300, by deception with the intent to deprive <u>PKF</u> of the property. . . .

(Emphases added.) Thus, PKF itself was clearly a "direct victim" of Oki's crimes, for purposes of HRS § 706-646. No party disputes that the entity formerly known as PKF, however, now exists as Spire.[26] An entity's name change is a mere formality

---

[26] The circuit court also made findings, unchallenged on appeal, regarding PKF's name change in its Decision:

> 81. On September 14 and October 15, 2015, Defendant filed a separate Statement of Change reporting Lucas Sayin and Lucas Sayin, LLC as PKF's partners. <u>See</u>, State's Exhibit 195.
>
> 82. On October 23, 2015, PKF submitted a Statement of Amendment reporting PKF Pacific Hawaii, LLP, had changed its name to Spire Hawaii, LLP ("Spire"). <u>See</u>, State's Exhibit 194.
>
> 83. On[] that same date, Spire submitted a Statement of Change reporting the removal of Patrick Oki and Oki

and the legal entity itself still remains in existence. <u>Cf.</u> <u>W.T. Rawleigh Medical Co. v. Bunning</u>, 176 N.W. 85, 86 (Neb. 1920) ("A change of corporate name does not make a new corporation, but only gives the corporation a new name." (citation omitted). It follows, therefore, that Spire, standing in the shoes of PKF, is the direct victim of Oki's crimes in this matter.

The State, however, asserts that the former partners of PKF (Chew, Takeno, Nakashima, and Nomura) are also direct victims and entitled to restitution based on their equity ownership interest and their lost wages. We disagree. Oki was found to have committed theft of PKF's property despite Oki having a majority ownership interest in the property precisely because of the principle under partnership law that individual partners do not own any of the partnership assets. <u>See</u> HRS § 425-110 ("Property acquired by a partnership is property of the partnership and not of the partners individually."). For the same reason, the other partners cannot be found to be owners of the PKF funds that Oki stole. PKF is a legally separate entity from the individual partners that constitute the partnership. HRS § 425-108(a) (2004) ("A partnership is an entity distinct from its partners.").

The former partners' requests for restitution based on lost wages also fail for the same reasons. During the restitution hearing, each partner testified that their lost wages were a result of Oki's actions because, but for Oki's theft of PKF funds, PKF would have had sufficient funds available to pay the partners' guaranteed compensation. This assertion, however, innately acknowledges that the funds were the property of PKF, subject to further distribution.

A point of contention during the lower court proceedings was the nature of how the partners were compensated

Accounting, LLC, as general partners of the firm. <u>See</u>, State's Exhibit 194.

and therefore whether the money taken by Oki could be considered "lost wages" recoverable by the other partners as restitution. See Demello II, 136 Hawaiʻi at 197, 361 P.3d at 424 (holding that reasonable and verified lost wages are recoverable as restitution). The partners testified at the restitution hearing, however, that there was no formal written agreement providing the nature of the guaranteed compensation, that it was done by oral agreement among all partners, including Oki, and that the only written documentation were email trails referencing the amounts of the guaranteed compensation. The partners' purported lost wages were therefore not verifiable by the circuit court. See HRS § 706-646 (requiring restitution for reasonable and verified losses suffered). Adjudicating the actual nature of the partners' compensation, and therefore what each partner was entitled to in lost wages, is a determination that requires a more extensive civil proceeding. Demello II, 136 Hawaiʻi at 197, 361 P.3d at 424 ("Where lost wages cannot be verified, which may be the case if the victim was unemployed or if the request is for expected future income, adjudication will require a more extensive civil proceeding.").

To the extent that the other partners were identified by the circuit court as "victims," they were identified as such solely in their capacities as partners of PKF. Any claim they have therefore only arises from their relationship to PKF, which exists as a separate entity. PKF was the sole victim and therefore the sole entity entitled to restitution. Any dispute, however, as to the proper allocation of the restitution funds amongst Chew, Takeno, Nakashima, and Nomura, in their capacities as PKF's partners at the time of the crimes, would best be resolved in a civil proceeding. Demello II, 136 Hawaiʻi at 197, 361 P.3d at 424; see O'Neal v. State, 426 S.W.3d 242, 252-53 (Tex. App. 2013).

## V. CONCLUSION

Based on the foregoing, the Amended Judgment of

43

Conviction and Sentence, entered on May 24, 2018, in the Circuit Court of the First Circuit, is affirmed in part and vacated in part.  We also vacate the Free-Standing Order of Restitution.  We vacate the circuit court's order of restitution "into a designated account and thereafter subject to future claims by the defunct entity, PKF Pacific Hawaii, LLP, its former partners, as well as, any other entity including Spire, LLP and Grant Thornton, LLP, able to establish a legally recognized and enforceable claim by way of a civil judgment, civil order or settlement agreement," and remand this matter to the circuit court to order restitution directly to Spire, the entity formerly known as PKF.  The Amended Judgment is affirmed in all other respects.

DATED:  Honolulu, Hawaiʻi, June 5, 2020.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee/
Cross-Appellant.

Peter Van Name Esser,
for Defendant-Appellant/
Cross-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Derrick H. M. Chan
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge